## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

JOSHUA IVY FROST,              )
                                  )
        Plaintiff,            )
                                  )
     v.                    )     Case No. 2:12-CV-37-NAB
                                  )
CAROLYN W. COLVIN[1],     )
Acting Commissioner of Social Security,  )
                                  )
        Defendant.      )

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Joshua Frost's ("Frost") application for a period of disability and disability insurance benefits and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. Frost alleges disability due to a broken left heel and fractured bones in the right foot. (Tr. 115) The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 6].

## I.      Procedural History

On January 4, 2010, Frost filed applications for a period of disability, disability insurance benefits, and SSI benefits. (Tr. 88-100). The Social Security Administration ("SSA") denied Frost's claim and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 42-50). The SSA granted Frost's request and the hearing took place on September 22, 2010. (Tr. 56-62, 28-40). The ALJ issued a written decision on December 1, 2010. (Tr. 15-

---

[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

24).  Frost requested review of the ALJ's decision from the Appeals Council.  (Tr. 7-10).  On

March 22, 2012, the Appeals Council denied Frost's request for review.  (Tr. 1-4).  The decision

of the ALJ thus stands as the final decision of the Commissioner.  *See Sims v. Apfel,* 530 U.S.

103, 107 (2000).  Frost filed this appeal on May 17, 2012.  [Doc. 1.]  The Commissioner filed an

Answer on July 26, 2012.  [Doc. 9.]  Frost filed a Brief in Support of his Complaint on August 8,

2012.  [Doc. 11.]  The Commissioner filed a Brief in Support of the Answer on October 22,

2012. [Doc. 19.]

## II.    Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 416(i)(1)(A), 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a

claimant seeking disability benefits is in fact disabled.    20 C.F.R. §§ 404.1520(a)(1),

416.920(a)(1).  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, the claimant must establish that he or she has an

impairment or combination of impairments that significantly limits his or her ability to perform

basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Third, the claimant

must establish that his or her impairment meets or equals an impairment listed in the appendix to

the applicable regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing

past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the burden

shifts to the Commissioner to establish that the claimant maintains the residual functional

capacity to perform a significant number of jobs in the national economy.  *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000).  If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision.  *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994).  Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.  *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III.   ALJ's Decision

The ALJ determined that Frost met the insured status requirements of the Social Security Act through December 13, 2012 and had not engaged in substantial gainful activity since December 18, 2009, the alleged onset date of disability.  (Tr. 17.)  The ALJ found that Frost had the severe impairments of broken left heel, fractured bones in right foot, and lower back pain. (Tr. 17.)   The ALJ also found that Frost did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 20.)  The ALJ determined that Frost had the residual functional capacity ("RFC") to perform less than the full range of sedentary work, with the limitations that he should never climb a ladder, rope, or scaffold; never kneel, crouch, or crawl; with a sit/stand option.  (Tr. 20.)  He also determined that Frost could not perform any past relevant work as a construction laborer, farm laborer, or fast food worker.   (Tr. 23.)   The ALJ found that considering Frost's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that he can perform.  (Tr. 23.)  The ALJ concluded that Frost has not been under a disability, as defined in the Social Security Act from December 18, 2009, through the date of the decision.  (Tr. 24.)

## IV.   Discussion

Frost asserts that the ALJ erred by improperly rejecting the functional capacity evaluation of physical therapist Brett Derrick, giving great weight to the Physical RFC Assessment of single

decision maker Kristen Bax, holding lack of physical therapy resources against Frost, and failing to pose a proper hypothetical question to the vocational expert.

A.      Opinion Evidence

First, the Court will address the weight given to the opinions in the medical record relied upon by the ALJ to determine Frost's RFC.

RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1]  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.  *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources*.  It then divides *other sources* into two groups: *medical sources* and *non-medical sources*.  *Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists.  According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted).  Medical sources include nurse practitioners, physician assistants, licensed clinical

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184, at *1.

social workers, naturopaths, chiropractors, audiologists, and therapists."   20 C.F.R. §§ 404.1513(d)(1), 416.913(d). "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. "[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. §§ 404.1513(d), 416.913(d). A severe impairment is defined as one which significantly limits the claimant's physical or mental ability to do basic work activities. *See Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). "The case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources . . .who have seen the claimant in their professional capacity." SSR 06-03p.

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p.

According to SSR 96-6p, "[a]t the administrative law judge and Appeals Council levels, RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." SSR 96-6p, 1996 WL 374180 (July 2, 2006). These opinions "are to be

evaluated considering all of the factors set out in the regulations for considering opinion evidence." *Id.*

The ALJ evaluated several opinions in the case record.  First, the ALJ gave great weight to the opinions of Frost's treating physicians at the University of Missouri Health Care.  (Tr. 22.)  The ALJ does not mention the physicians by name.   The medical records show that Frost's treating physicians included Dr. Gregory John Della Rocca, Dr. Harmeeth Singh Uppal, Dr. Brett Crist, Dr. Kevin Paisley, Dr. John Montgomery III, Dr. Donald Hicks, Dr. Clayton Nuelle, Dr. Joel T. Jeffries, and Dr. Conrad Ivie.  (Tr. 166-236, 262-279.)   Although the ALJ gave great weight to Dr. Rocca's treatment notes, he rejected Dr. Rocca's opinion in a Residual Functional Capacity Assessment that Frost could lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds, because such weight exceeds the sedentary exertional level.  (Tr. 22, 288-297.)  The ALJ also rejected the FCE completed by physical therapist Brett Derrick as he was not an acceptable medical source.  (Tr. 22, 299-306.)  The ALJ gave great weight to the Physical RFC Assessment of Kristen Bax, a single decisionmaker.

The ALJ's decision clearly indicates that the ALJ committed two legal errors.  First, the ALJ failed to consider the opinion of physical therapist Brett Derrick.  Although Derrick's FCE could not be used to establish that Frost had a medically determinable impairment, the FCE can and should be considered when determining the severity of Frost's impairments and how they affect his ability to function.  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  The FCE provided the most detailed information in the record regarding Frost's functional abilities.  (Tr. 299-306.)  The ALJ should not have rejected the FCE without considering it.

Second, the ALJ substantially erred in giving great weight to the opinion of single decisionmaker Karen Bax.  (Tr. 23, 237-242.)   Single decision makers' opinions are not

acceptable medical sources entitled to consideration under the Social Security regulations.  *See* 20 C.F.R. §§ 404.1513, 416.913.   The ALJ indicated that he gave Bax's opinion the consideration entitled to state agency medical consultants, even though her opinion indicates that she is not a medical consultant (Tr. 242.)  The ALJ "weighed the opinion of a lay person under the rules appropriate for weighing the opinion of a medical consultant, which would be a legal error in applying the ruling."  *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007).

The Commissioner acknowledges that these errors occurred, but states that the errors are harmless, because the ALJ's RFC is supported by objective evidence in the medical record from Dr. Ivie and Dr. Rocca and the single decisionmaker's opinion was consistent with that evidence.

The Court finds that these legal errors require reversal and remand.  The Court cannot say that the ALJ would inevitably have reached the same result if he had understood that the Residual Functional Capacity Assessment had not been completed by a physician or other qualified medical consultant or if he had considered the FCE.  *Dewey*, 509 F.3d at 449-50.  Thus, the ALJ's decision is not supported by substantial evidence in the record as a whole.  The ALJ's decision substantially follows the Physical RFC completed by Bax.  Further, there are some differences between the medical opinion given by Dr. Rocca and Bax's opinion.  For example, Dr. Rocca opined that Frost could stand or walk for less than 2 hours a day and Bax found that he could stand and/or walk for at least 2 hours a day.  (Tr. 238, 291.)  The Court acknowledges that the ALJ's RFC determination gave more restrictive weight limits than Dr. Rocca's opinion and included Dr. Rocca's opinion that a sit/stand option was necessary.  Based on the entire record, however, the Court believes that a reversal is required to provide an accurate RFC assessment based on the social security regulations requirements regarding the proper evaluation of medical opinion evidence.   The Court will not address Plaintiff's arguments regarding

8

Plaintiff's credibility and the hypothetical question to the ALJ, as these issues should be resolved after the ALJ re-evaluates the opinion testimony and RFC.

### B.    Durational Requirements

The Court will briefly address the Commissioner's assertion that Frost has not met the durational requirements under the Social Security Act.  *See* 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  Although the Commissioner's argument is not fully developed, it appears that the Commissioner is asserting that the limitations caused by Frost's accident were not disabling for at least 12 months after the alleged onset date of disability.  The Court disagrees.  A claimant does not have to show that he has been treated for twelve months, the claimant only has to show "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months."  *Id.*  At the time of the ALJ's opinion, Dr. Rocca opined that Frost's functional improvement with additional treatment would be gradual during the next one and a half to two years.  (Tr. 288.)  Further, Dr. Rocca stated that a FCE would be necessary to determine Frost's ability to engage in competitive employment.  (Tr. 289.)  The medical evidence also shows that Frost continued to receive a substantial amount of treatment into 2011, after the ALJ' decision, including placement of a spinal cord stimulator in October 2011.  (Tr. 343-345.)  The Court notes that Frost indicated temporary improvement with some of the treatment, but there is no substantial evidence in the record that would show that Frost was able to engage in substantial gainful activity less than twelve months after the alleged onset date of disability.  *See e.g. Rowland v. Astrue*, No. 11-5174, 2012 WL 5463069 at *3 (W.D. Ark. Nov. 8, 2012) (no indication in medical records that that plaintiff's impairment would be resolved in less than twelve months and evidence

subsequently submitted may have changed ALJ's decision).  Therefore, the Court finds that at this time substantial evidence does not demonstrate Frost fails to meet the durational requirements of the Social Security Act.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the ALJ for a new determination of Frost's residual functional capacity, including a new assessment of the appropriate weight for the Functional Capacity Assessment by Brett Derrick and the Physical Residual Functional Capacity Assessment by Karen Bax in this case in accordance with this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Carolyn W. Colvin for Michael J. Astrue in the court record of this case.

A separate written judgment will be entered this date in favor of Plaintiff reversing and remanding this case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 26th day of September, 2013.


   /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE